Case 11-02127    Doc 1    Page 1 of 16

2011-02127
FILED
February 24, 2011
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0003303246

BRAD A. MOKRI, SBN: 208213
JENNIFER N. HUPE, SBN: 256009
LAW OFFICES OF MOKRI & ASSOCIATES
1851 E. First Street, Suite 900
Santa Ana, California 92705
Telephone No.: (714) 619-9395
Facsimile No.: (714) 619-9396

Attorney for Plaintiff
HERITAGE PACIFIC FINANCIAL LLC.

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA
## SACRAMENTO DIVISIONAL OFFICE

| | |
|---|---|
| In Re:<br><br>JEFFERY P. AND NICOLE J. ADAMS<br><br>Debtor.<br>_____<br>HERITAGE PACIFIC FINANCIAL, LLC.<br>D/B/A HERITAGE PACIFIC FINANCIAL, a<br>Texas Limited Liability Company,<br><br>Plaintiff,<br>vs.<br><br>JEFFERY P. AND NICOLE J. ADAMS<br><br>Defendant. | Chapter 7<br>Bankruptcy No. : 2:10-bk-50368<br>Adversary Case No.:<br><br><br>**PLAINTIFF'S COMPLAINT TO**<br>**DETERMINE DISCHARGEABILITY OF**<br>**DEBT**<br><br>[11 U.S.C. §523(a)(2)(A); 11 U.S.C.<br>§523(a)(2)(B)]<br><br><br>DATE: See Summons |

## COMPLAINT TO DETERMINE THE
## DISCHARGEABILITY OF DEBT AND FOR JUDGMENT

Plaintiff, through its attorney, Brad A. Mokri, of Law Offices of Mokri & Associates, states as follows:

## PARTIES AND JURISDICTION

1. This is an adversary proceeding in bankruptcy brought by Heritage Pacific Financial, LLC. dba Heritage Pacific Financial pursuant to 11 U.S.C. § 523.

2. Defendant filed a Chapter 7 bankruptcy petition on November 17, 2010. Jurisdiction isvested in this proceeding pursuant to 28 U.S.C. § 157, 28 U.S.C. §1334, and 11 U.S.C. § 523; this matter is a core proceeding.

4. Plaintiff is a creditor of defendant. Plaintiff is the assignee and current owner and/or holder of Defendant's loan and related mortgage note.

## GENERAL ALLEGATIONS

5. Plaintiff is informed and believes, and thereon alleges that in an effort to obtain funds to purchase and/or refinance a property, Defendant completed, or caused to have completed on their behalf, a Uniform Residential Loan Application ("Loan Application"), otherwise known as a 1003 Form, which Defendant executed and signed. A true and correct copy of the Uniform Residential Loan Application is attached as **Exhibit "A"** and incorporated by reference herein.

6. Defendant obtained loans evidenced by promissory notes executed by Defendant. Plaintiff is the true and current owner and holder of Defendant's loan and related promissory note. A true and correct copy of the Note is attached as **Exhibit "B"** and incorporated by reference herein.

7. Defendant certified the accuracy of the information contained in the Loan Application and expressly consented to the verification and re-verification of the information contained therein.

8. Among other information required to be certified, and in fact certified, by Defendant on the Loan Application, was information regarding Defendant's current employer, gross monthly income, and intent to use the property securing the loan as Defendant's primary residence.

9. Defendant knew that their then-current income was insufficient to obtain the

loans, and in an effort to secure the more favorable primary-residence financing rate, Plaintiff is informed, believes and thereon alleges that Defendant provided, prepared, or caused to be prepared, a Loan Application which materially misstated Defendant's employment, income and/or intended use of the property as a primary residence; and caused Defendant's agent to submit to the lender a materially false Loan Application and other materially false documents related thereto.

10. Plaintiff is informed, believes, and thereon alleges that Defendant directed, instructed, and caused to have their materially false Loan Application and supporting documentation transmitted to Defendant's lender knowing that the information in the Loan Application and supporting documentation was materially false.

11. The lender did not know, and had no reason to know, that the information and documentation provided by Defendant in and in conjunction with the Loan Application was false. In reliance on the information and documentation provided by Defendant, the lender approved Defendant's Loan Application.

12. Defendant executed a promissory note in favor of the lender, pursuant to which Defendant agreed and promised to repay the loan according to the terms of the promissory note. The proceeds of the loan, as stated in the promissory note, were to be used to purchase and/or refinance the property securing the promissory note.

13. The lender fully performed, including by disbursing the loan proceeds to Defendant. The lender and/or its assignees duly assigned Defendant's loan and promissory note to Plaintiff, who is currently the owner and holder of Defendant's loan and promissory note.

14. Defendant defaulted on their payment obligations and obligation to re-verify the information contained in the Loan Application despite the Plaintiff's request therefore.

15. Plaintiff is informed, believes, and thereon alleges that in applying for the loan, the Defendant knowingly misstated her monthly income on their Loan Application and concealed their true income. Plaintiff is further informed and believes that the Defendant knowingly misstated the status of their employment on the Loan Application and concealed their true employment status. Plaintiff is further informed and believes that Defendant misrepresented their residency such that

the property securing the loan was not Defendant's primary residence, and concealed their true residency status.

16. The promissory note was duly assigned by the original lender and/or its assignees to Plaintiff, who is the current owner and/or holder of Defendant's Loan and related mortgage note.

17. Plaintiff is not barred from pursuing this action by any anti-deficiency statute or rule. Plaintiff does not seek a deficiency judgment for the balance of a promissory note following foreclosure, but rather seeks a judgment for Defendant's fraud in connection with their loan application, as alleged herein. Plaintiff has attempted to resolve this matter prior to filing this complaint by contacting Defendant.

## FIRST CLAIM FOR RELIEF

### False Pretenses, False Representation or Actual Fraud

### [11 U.S.C. § 523(a)(2)(A)]

18. Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 17, above.

19. In an effort to obtain funds to purchase and/or refinance their property, Defendant completed, or caused to have completed on their behalf, a Uniform Residential Loan Application ("Loan Application"), otherwise known as a 1003 Form, which Defendant executed and signed. A true and correct copy of the Uniform Residential Loan Application is attached as **Exhibit "A"** and incorporated by reference herein. Defendant utilized this loan, creating a balance due and owing on this loan of $63,999.64 including interest as of the date the bankruptcy petitioner was filed.

20. Defendant obtained the money by false pretenses, a false representation and actual fraud by misrepresenting that the money obtained for the purpose of purchasing a property for their primary residence. Defendant misrepresented her intended use of the property as their primary residence as the property was being purchased for another individual.

21. The lender did not know, and had no reason to know, that defendant misrepresented their intended use of the property and in reliance on the information approved the loan.

22. At the time of obtaining the money from the lender execution of the loan, Defendant failed to disclose to Lender that they did not and would not use the property as their primary residence. Lender justifiably relied on Defendant's representation and paid money for the purchase of a primary residence.

23. By reason of the foregoing, Defendant obtained money from the lender through false pretenses, false representations and actual fraud. Defendant's actions constitute material misrepresentations of the facts. Defendant intended for the lender to rely on the misrepresentation.

24. Lender reasonably relied upon Defendant's misrepresentations and was induced to lend money to Defendant by those misrepresentations.

25. Within the three years prior to the filing of this Complaint, through its independent investigation and collection attempts, Plaintiff discovered that the representations made on Defendant's Loan Application were false.

26. As a result of Defendant's conduct, Plaintiff has suffered damages at a minimum in the amount of $63,999.64 plus interest and reasonable attorney fees. Pursuant to 11 USC § 523(a)(2)(A), Defendant should not be granted a discharge of this debt to the Plaintiff in the amount of $63,999.64 plus interest and reasonable attorney fees.

## SECOND CLAIM FOR RELIEF

### Use of False Statement in Writing

### [11 U.S.C. § 523(a)(2)(B)]

27. Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 25, above.

28. In an effort to obtain funds to purchase and/or refinance their property, Defendant completed, or caused to have completed on their behalf, a Uniform Residential Loan Application ("Loan Application"), otherwise known as a 1003 Form, which Defendant executed and signed.

A true and correct copy of the Uniform Residential Loan Application is attached as **Exhibit "A"** and incorporated by reference herein. Defendant utilized this loan, creating a balance due and owing on this loan of $63,999.64 including interest as of the date the bankruptcy petitioner was filed.

29. In an effort to obtain the funds, Defendant caused to have completed on their behalf, a Uniform Residential Loan Application, otherwise known as a 1003 Form, which Defendant executed and signed.

30. On the Uniform Residential Loan Application, Defendant certified the accuracy of the information contained therein including but not limited to financial condition of Defendant and consented to the verification and re-verification of the information contained therein.

31. Among the information provided and certified by Defendant in their Uniform Residential Loan Application, Defendant was required to certify information regarding their current employer, statements of their gross monthly income, and to certify that their intended to use the loan proceeds to purchase real property which Defendant intended to use as their primary residence.

32. In furtherance of their effort, because Defendant knew that their then current income was insufficient to support the approval of the loan and/or in an effort to secure the more favorable primary-residence financing rate, Plaintiff is informed, believes and thereon alleges that Defendant:

   a) Provided, prepared, caused to be prepared, false loan applications, which misstated their employment, income and/or intended use of the property as a primary residence;

   b). Certified a false loan application, which misstated their employment income and/or intended use of the property as a primary residence; and

   c). Caused their agents to submit to lenders a false loan application and other loan related documents

33. The lender did not know, and had no reason to know, that the information and documentation provided by Defendant in, and in conjunction with, their loan applications was

---

PLAINTIFF'S COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

- 6 -

false, and in reliance on the information and documentation provided by Defendant to the lender therein approved the loan.

34. Defendant executed a promissory note in favor of their initial lender, its successors, transferees, and assigns. In the loan application Defendant expressly represented to the original lender and to its successor in interest the accuracy of the information.

35. The proceeds of the loan, as referenced in the promissory note, were to be used by Defendant in the purchase or refinance of the property described therein. In exchange, Defendant agreed and promised to pay according to the mutually agreed upon terms and conditions more particularly described in the promissory notes.

36. Lender fully performed, and Defendant acquired title to the property. The promissory note was duly assigned by the original lender and/or its assignees to Plaintiff, who is the current owner and/or holder of Defendant's Loan and related mortgage note.

37. Defendant has defaulted on their obligations to pay and to re-verify the information contained in the Uniform Residential Loan Application. Despite Plaintiff's attempts to secure information from Defendant to re-verify the information contained in their loan application, Defendant has failed and/or refused to comply with Plaintiff's requests.

38. Within the three years prior to the filing of this Complaint, through its independent investigation and collection attempts, Plaintiff discovered that the representations made on Defendant's Loan Application were false.

39. By reason of the foregoing, Defendant obtained money by using a statement in writing that falsely represented Defendant's financial condition on which the lender relied on. Defendant submitted the loan application with the intent to deceive the lender. Defendant, therefore, had a specific intent to defraud their lender.

40. Defendant's actions constitute material misrepresentations of the facts. Defendant intended for their ender to rely on those misrepresentations. Lender did rely upon Defendant's misrepresentations of repayment and was induced to lend money to Defendant by those misrepresentations. Lender reasonably relied on Defendant's misrepresentations.

PLAINTIFF'S COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

41. As a result of Defendant's conduct, Plaintiff has suffered damages at a minimum in the amount of $63,999.64 plus interest and reasonable attorney fees. Pursuant to 11 USC § 523(a)(2)(B), Defendant should not be granted a discharge of this debt to the Plaintiff in the amount of $63,999.64 plus interest and reasonable attorney fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court grant the following relief:

1. A monetary judgment against Defendant in the amount of $63,999.64, plus accrued interest at the contractual rate, plus, additional interest at the contractual rate, which will continue to accrue until the date of judgment herein;

2. An order determining that such debt is non-dischargeable under 11 USC § 523(a)(2)(A) and (B);

3. An order awarding Plaintiff its attorneys' fees and costs incurred herein; and

4. An order awarding Plaintiff such additional relief as this Court deems just and equitable.

Dated: February 16, 2010

**Respectfully Submitted,**

**LAW OFFICES OF MOKRI & ASSOCIATES**

By: /S/ BRAD A. MOKRI
    Brad A. Mokri
    Attorney for Plaintiff
    Heritage Pacific Financial, LLC.
    dbaHeritage Pacific Financial

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when [X] the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or [ ] the income or assets of the Borrower's spouse will not be used as a basis for loan qualification, but his or her liabilities must be considered because the Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | [ ] VA  [X] Conventional  [ ] Other (explain) [ ] FHA  [ ] USDA/Rural Housing Service | Agency Case Number | Lender Case Number |
|---|---|---|---|
| Amount $ 64,650.00 | Interest Rate 6.500 % | No. of Months 120 | Amortization Type: [ ] Fixed Rate  [X] Other (explain) See Agreement  [ ] GPM  [ ] ARM (type) |

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, & ZIP): 5709 GLASSBORO WAY SACRAMENTO California 95842 | No. of Units: 1 |
|---|---|
| Legal Description of Subject Property (attach description if necessary) | Year Built: 1986 |

Purpose of Loan: [ ] Purchase  [ ] Construction  [X] Other (explain) 2ND LIEN  [X] Refinance  [ ] Construction-Permanent

Property will be: [X] Primary Residence  [ ] Secondary Residence  [ ] Investment

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost $ | Amount Existing Liens $ | (a) Present Value of Lot $ | (b) Cost of Improvements $ | Total (a + b) $ |

Complete this line if this is a refinance loan.

| Year Acquired | Original Cost $ | Amount Existing Liens $ 217,500.00 | Purpose of Refinance | Describe Improvements [ ] made [ ] to be made  Cost $ |

| Title will be held in what Name(s) | Manner in which Title will be held | Estate will be held in [X] Fee Simple  [ ] Leasehold (show expiration date) |

Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain)

## III. BORROWER INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|
| Name (include Jr or Sr if applicable) | JEFFERY ADAMS | NICOLE ZACHERSON |
| Social Security Number | ****5184 | ****0583 |
| Home Phone | | |
| DOB (MM/DD/YYYY) | /1972 | /1978 |
| Yrs School | 15 | 16 |
| Marital Status | [X] Unmarried (include single, divorced, widowed) | [X] Unmarried (include single, divorced, widowed) |
| Dependents (not listed by Co-Borrower) | no: NONE | no: |
| Present Address | [X] Own [ ] Rent  1 No Yrs, 7 mos. | [X] Own [ ] Rent  1 No Yrs, 7 mos. |
| | SACRAMENTO, California 95842 | SACRAMENTO, California 95842 |

If residing at present address for less than two years, complete the following:

| Former Address | [ ] Own [X] Rent  2 No Yrs, 5 mos.  SACRAMENTO, CA 95818 | [ ] Own [X] Rent  2 No Yrs, 5 mos.  CITRUS HEIGHTS, CA 95610 |

## IV. EMPLOYMENT INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|
| Name & Address of Employer | , CA | , CA |
| Self Employed | [ ] | [ ] |
| Yrs on this job | 9 | 4 |
| Yrs employed in this line of work/profession | 9 | 10 |
| Position/Title/Type of Business | MGR/ | CUSTOMER SERVIC/ |
| Business Phone | | |

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| | Borrower | Co-Borrower |
|---|---|---|
| Name & Address of Employer | | |
| Dates (from - to) | | |
| Monthly Income | $ | $ |
| Position/Title/Type of Business | / | / |
| Business Phone | | |
| Name & Address of Employer | | |
| Dates (from - to) | | |
| Monthly Income | $ | $ |
| Position/Title/Type of Business | / | / |
| Business Phone | | |

Freddie Mac Form 65 01/04  
Fannie Mae Form 1003 01/04  
Page 1 of 4

Initials

NATL21N(CA) (0305) 01    VMP Mortgage Solutions, Inc. (800)521-7291

EXHIBIT A

CA4D800

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl Income* | $ 3,352.00 | $ 2,730.00 | $ 6,082.00 | Rent | $ | |
| Overtime | | | | First Mortgage (P&I) | | $ 1,213.00 |
| Bonuses | | | | Other Financing (P&I) | | 452.55 |
| Commissions | | | | Hazard Insurance | | |
| Dividends/Interest | | | | Real Estate Taxes | | |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing see the notice in describe other income below) | | | | Homeowner Assn Dues | | |
| | | | | OtheMISC 1007 | | |
| Total | $ 3,352.00 | $ 2,730.00 | $ 6,082.00 | Total | $ | $ 1,665.55 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements

Describe Other Income   Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan

| B/C | | Monthly Amount |
|---|---|---|
| | / | $ |
| | / | |
| | / | |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis, otherwise separate Statements and Schedules are required  If the Co Borrower section was completed about a spouse, this Statement and supporting schedules must be completed about that spouse also

Completed [X] Jointly [ ] Not Jointly

| ASSETS Description | Cash or Market Value | Liabilities and Pledged Assets List the creditor's name, address and account number for all outstanding debts  including automobile loans  revolving charge accounts, real estate loans  alimony child support  stock pledges, etc Use continuation sheet, if necessary  Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property | | |
|---|---|---|---|---|
| Cash deposit toward purchase held by | $ | **LIABILITIES** | **Monthly Payment & Months Left to Pay** | **Unpaid Balance** |
| | | Name and address of Company | $ Payment/Months | $ |
| List checking and savings accounts below | | | | |
| Name and address of Bank, S&L, or Credit Union | | | / | 0.00 |
| | | Acct no | | |
| | | Name and address of Company | $ Payment/Months | $ |
| Acct no | $ | | | |
| Name and address of Bank S&L or Credit Union | | | / | 0.00 |
| | | Acct no | | |
| | | Name and address of Company | $ Payment/Months | $ |
| Acct no | $ | | | |
| Name and address of Bank, S&L or Credit Union | | | / | 0.00 |
| | | Acct no | | |
| | | Name and address of Company | $ Payment/Months | $ |
| Acct no | $ | | | |
| Name and address of Bank, S&L, or Credit Union | | | / | 0.00 |
| | | Acct no | | |
| | | Name and address of Company | $ Payment/Months | $ |
| Acct no | $ | | | |
| Stocks & Bonds (Company name/ number & description) | $ < > < > < > | | / | |
| | | Acct no | | |
| | | Name and address of Company | $ Payment/Months | $ |
| Life insurance net cash value | $ | | / | |
| Face amount $ | < > | | | |
| Subtotal Liquid Assets | $ | | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ | Acct no | | |
| Vested interest in retirement fund | $ | Name and address of Company | $ Payment/Months | $ |
| Net worth of business(es) owned (attach financial statement) | $ | | / | |
| Automobiles owned (make and year) | $ | | | |
| | | Acct no | | |
| | | Alimony/Child Support/Separate Maintenance Payments Owed to | $ | |
| Other Assets (itemize) | $ | | | |
| Furniture | | Job-Related Expense (child care, union dues, etc) | $ | |
| | | **Total Monthly Payments** | $ 1,213.00 | |
| Total Assets a. | $ | Net Worth (a minus b) ► $ (217,500.00) | Total Liabilities b. | $ 217,500.00 |

Initials

Page 2 of 4

NATL21N(CA) (0305) 01

Freddie Mac Form 65 01/04
Fannie Mae Form 1003 01/04

CA4D801

## I. ASSETS AND LIABILITIES (cont.)

Schedule of Real Estate Owned (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc | Net Rental Income |
|---|---|---|---|---|---|---|---|
| SEE SCHEDULE OF REAL ESTATE OWNED | | $ | $ | $ | $ | $ | $ |
| | | | | | | | |
| | | | | | | | |
| | Totals | $ | $ | $ | $ | $ | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |
| | | |

## VII. DETAILS OF TRANSACTION

| | | |
|---|---|---|
| a | Purchase price | $ 297,000.00 |
| b | Alterations, improvements, repairs | |
| c | Land (if acquired separately) | |
| d | Refinance (incl. debts to be paid off) | |
| e | Estimated prepaid items | |
| f | Estimated closing costs | 1,400.00 |
| g | PMI, MIP, Funding Fee | |
| h | Discount (if Borrower will pay) | |
| i | Total costs (add items a through h) | 1,400.00 |
| j | Subordinate financing | |
| k | Borrower's closing costs paid by Seller | |
| l | Other Credits (explain) | |
| m | Loan amount (exclude PMI, MIP, Funding Fee financed) | 64,650.00 |
| n | PMI, MIP, Funding Fee financed | |
| o | Loan amount (add m & n) | 64,650.00 |
| p | Cash from/to Borrower (subtract j, k, l & o from i) | (63,250.00) |

## VIII. DECLARATIONS

If you answer "Yes" to any questions a through i, please use continuation sheet for explanation.

| | Borrower | | Co-Borrower | |
|---|---|---|---|---|
| | Yes | No | Yes | No |
| a. Are there any outstanding judgments against you? | | X | | X |
| b. Have you been declared bankrupt within the past 7 years? | | X | | X |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | X | | X |
| d. Are you a party to a lawsuit? | | X | | X |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? | | X | | X |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? | | X | | X |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | | X | | X |
| h. Is any part of the down payment borrowed? | | X | | X |
| i. Are you a co-maker or endorser on a note? | | X | | X |
| j. Are you a U.S. citizen? | X | | X | |
| k. Are you a permanent resident alien? | | X | | X |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | X | | X | |
| m. Have you had an ownership interest in a property in the last three years? | X | | X | |
| (1) What type of property did you own -- principal residence (PR), second home (SH), or investment property (IP)? | PR | | PR | |
| (2) How did you hold title to the home -- solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | S | | S | |

## IX. ACKNOWLEDGMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described herein; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated herein; (6) any owner or servicer of the Loan may verify or reverify any information contained in the application from any source named in this application, and Lender, its successors or assigns may retain the original and/or an electronic record of this application, even if the Loan is not approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the owner or servicer of the Loan may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer credit reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

| Borrower's Signature X | Date 04/06/05 | Co Borrower's Signature X | Date 04/06/05 |
|---|---|---|---|

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may discriminate neither on the basis of this information, nor on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation or surname. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER [X] I do not wish to furnish this information | CO-BORROWER [X] I do not wish to furnish this information |
|---|---|
| Ethnicity: ☐ Hispanic or Latino ☐ Not Hispanic or Latino | Ethnicity: ☐ Hispanic or Latino ☐ Not Hispanic or Latino |
| Race: ☐ American Indian or Alaska Native ☐ Asian ☐ Black or African American ☐ Native Hawaiian or Other Pacific Islander [X] White | Race: ☐ American Indian or Alaska Native ☐ Asian ☐ Black or African American ☐ Native Hawaiian or Other Pacific Islander [X] White |
| Sex: ☐ Female [X] Male | Sex: ☐ Female ☐ Male |

| To be Completed by Interviewer This application was taken by | Interviewer's Name (print or type) | Name and Address of Interviewer's Employer |
|---|---|---|
| ☐ Face-to-face interview | Interviewer's Signature | Date 3/15/2005 | ███████████ |
| ☐ Mail [X] Telephone ☐ Internet | Interviewer's Phone Number (incl. area code) | ███████████ IRVIN CA 92614 |

NATL21N(CA) (0305) 01     Page 3 of 4     Freddie Mac Form 65 01/04 Fannie Mae Form 1003 01/04

00... ...71610

## Continuation Sheet/Residential Loan Application

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower | Borrower<br>JEFFERY ADAMS | Agency Case Number |
|---|---|---|
| | Co-Borrower<br>NICOLE ZACHERSON | Lender Case Number |

LIABILITIES CONT'D:

Account No- /

Account No- /

Account No- /

Account No- /

Account No- /

Account No- /

Account No- /

Account No- /

Account No- /

Account No- /

Account No- /

Account No- /

Account No-

Under California Civil Code 1812.30(j) "Credit applications for the obtainment of money, goods, labor, or services shall clearly specify that the applicant, if married, may apply for a separate account."

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | 04/06/05 | X | 04/06/05 |

NA7L21N(CA) (0305) 01    Page 4 of 4    Freddie Mac Form 65 01/04 / Fannie Mae Form 1003 01/04

CA4D803

**National City.**

EQUITY RESERVE℠ AGREEMENT – NATIONAL HOME EQUITY
(Not to be Used for Lines Secured by a Texas Homestead)

Date: 4/06/2005      Account No _____

You, the undersigned, are opening an Equity Reserve Line of Credit (Line) with National City Bank (Bank) and agree that the following terms and conditions will apply to your Line

Line of Credit  Your Line is an open end line of credit which you may use to obtain cash advances (Advances) from time to time for a period of 10 years (Draw Period)  If you continue to meet Bank's then current credit and collateral value criteria, at Bank's discretion, Bank will either extend the Draw Period for one or more additional Draw Periods or Bank may refinance your Line on the terms then being offered by Bank for Equity Reserve Lines of Credit  If your Draw Period is not renewed or the Line refinanced  you may repay any outstanding balances during the Repayment Period as provided in the Payment section below
The initial amount of your Line is $ 64,650.00 (Credit Line)  You have the option anytime during the Draw Period of this Agreement to create Fixed Rate Partitions of all or part of your Line at a fixed rate and for a fixed payment  The Fixed Rate Partition (FRP) balance includes the partition advance fee  Any amount you repay on the Line and/or on an FRP will be again available to you on the Line until the end of the Draw Period  Bank may reduce the amount of your Credit Line under certain conditions described in this Agreement

Advances  You may obtain Advances under your Line by issuing Equity Reserve checks and special FRP checks (Checks) supplied by Bank, or by way of any other Bank approved plan  Bank will charge your Checks directly against your Line  You may make arrangements for an Advance or on-line banking Advances to pay off any FRP at any time by contacting Customer Service at the address or phone number on your statement  You should notify Bank when you need more Checks  The minimum FRP Advance that you can receive using an FRP Check is $5,000  FRP checks for less than $5,000 will be charged against your Line  You should also notify Bank immediately if your Checks are lost or stolen  (Please see the Stop Payment Orders section of this Agreement)  Your statement will list Checks that have been paid, but the actual paid Checks will not be returned to you  You may request copies of paid Checks from the Bank, and a copying fee may be charged
Bank may issue you a Card or Cards for use with the Line  Credit card access is not offered in Connecticut, New York and Texas and may not be offered in other states  The word Card can mean one or more credit cards or Automated Teller Machine (ATM) cards  You authorize Bank to issue you a Card for use with the Line  You may purchase goods or services from merchants who honor the Card  You may obtain Advances from Bank or any other financial institution that honors the Card  You may also obtain Advances by using a Personal Identification Number (PIN) for telephone banking or on-line banking Advances  Bank will charge all Advances to your Line  If you allow someone else to use your Card or PIN and you want to stop such use, you must let Bank know in writing  If he or she has a Card or PIN, you must return the Card with your written notice and/or request a new PIN  You must notify Bank immediately if your Cards or PIN are lost or stolen, or you believe that some person may be using your Card(s) or PIN without permission  You will not use your Line after notifying Bank of loss, theft or unauthorized use of your Card(s) or PIN  You will not be held liable for any unauthorized use of the Card or PIN after you have notified Bank of the loss or theft by phone at 1 800 533 6596 or in writing at National City Card Services, P O  Box 4092, Kalamazoo, Michigan 49003  (Otherwise you may be liable, but not for more than $50 )  Bank may terminate the use of your Card or PIN if you lose your Card or PIN two times or more in a twelve month period  Bank may also terminate the use of your Card or PIN if your new balance exceeds your Credit Line by 2% or if you are over limit for more than one billing cycle

Bank will have no obligation to honor any Advance by any means if the resulting new balance of your Line would exceed your Credit Line  or after the Draw Period ends  or in the event of termination or suspension of your Credit Line under the conditions described in this Agreement and upon Bank's request you will return Checks and/or Cards  Your Line may not be used for Internet lottery, betting or gambling transactions or for any illegal transactions
Charges from foreign merchants and financial institutions may be made in a foreign currency  We will bill you in U S  Dollars based on the exchange rate on the day we settle the transaction  plus any special currency exchange charges  In the case of VISA Accounts  The exchange rate applied to each such transaction is a (A) wholesale market rate or (B) government mandated rate, in effect one day prior to the processing date, increased by one percent  Because of the special charges and possible differences in exchange rates between the time we settle and the time you initiated the transaction, the total charge for a foreign transaction may be greater than the cash advance or purchase at the time it was made

Finance Charge for Line and Fixed Rate Partition Advances and During the Repayment Period
a) Line Advances  Bank figures the finance charge on your Line by applying the periodic rate to the  average daily balance  of your Line  To get the  average daily balance , Bank takes the beginning balance of the Line each day, adds any new Advances including if applicable, the broker and processing fees, and other debits, and subtracts any payments or credits and unpaid periodic finance charges  This gives the daily balance  Then, Bank adds up all the daily balances for the billing cycle and divides the total by the number of days in the billing cycle  This gives the  average daily balance
Advances are subject to finance charges from the date of transaction to the date payment is posted to the Line  The periodic rate of finance charge and the annual percentage rate are subject to change, based on the value of an index  The index in effect for each billing cycle shall be the "Prime Rate" of interest appearing in the Money Rates Table of The Wall Street Journal published on the first day of your Billing Cycle (or, if not published on that date, the last edition published prior to that date), rounded upward, if necessary, to the nearest  01 % (Line Index)

The **ANNUAL PERCENTAGE RATE** is the Line Index plus  0.750  %  The **FINANCE CHARGE** for each billing cycle shall be computed at the annual percentage rate divided by 12  The current periodic rate of **FINANCE CHARGE** is  0.542  % per month, which corresponds to an **ANNUAL PERCENTAGE RATE** of  6.500 %
The annual percentage rate and the periodic rate of finance charge may increase if the Line Index increases  In the event of an increase, the finance charge will increase and the minimum payment amount may increase  An increase or decrease in the annual percentage rate will result in a corresponding increase or decrease in the minimum payment amount

b) Fixed Rate Partition Advances  Bank figures the finance charge on each FRP by applying the periodic rate to the "average daily balance" of the FRP  To get the "average daily balance", Bank takes the beginning balance of the FRP each day and subtracts any payments or credits and unpaid periodic finance charges  This gives the daily balance  Then, Bank adds up all the daily balances for the billing cycle and divides the total by the number of days in the billing cycle  This gives the "average daily balance"
Each FRP is subject to finance charges from the date of the transaction until paid in full  The periodic rate of finance charge and the annual percentage rate are determined and fixed on the business day the transaction posts to your Line  The index shall be the daily rate for 3 year Treasury notes with constant maturities for the 10th business day prior to the last business day of the calendar month preceding the month in which the transaction posts to your Line, rounded upward, if necessary, to the nearest  01% (FRP Index)  The FRP Index can be found in the Federal Reserve Statistical Release H 15 at www federalreserve gov/releases/h15
The **ANNUAL PERCENTAGE RATE** is the FRP Index plus  4.500 %  The **FINANCE CHARGE** for each billing cycle shall be computed at the annual percentage rate divided by 12  The current periodic rate of **FINANCE CHARGE** is  0.699  % per month, which corresponds to an **ANNUAL PERCENTAGE RATE** of  8.390 %

c) Both Line and Fixed Rate Partition Advances  In no event shall the periodic rate of **FINANCE CHARGE** be more than 1 50% per month or less than 0 25% per month and in no event shall the **ANNUAL PERCENTAGE RATE** be more than 18 0% or less than 3 0%  The annual percentage rate includes only interest and not other costs  Your monthly statement will disclose the applicable annual percentage rate for the billing cycle

d) Repayment Period  Any outstanding Line balance and Other Charges will be converted to a Fixed Rate Partition balance on the last business day of your Draw Period and will be subject to finance charges for a Fixed Rate Partition as stated in subsections (b) and (c) above  The index value is the FRP Index on the 10th business day prior to the last business day of the calendar month preceding the month in which the Draw Period ends rounded as provided in subsection (b) above

Other Finance Charges   A broker fee **FINANCE CHARGE** of $ 900.00
A processing fee **FINANCE CHARGE** of $  0.00
A Partition Advance fee **FINANCE CHARGE** of $50 for each Fixed Rate Partition used

NHEAGMT1 (07/04)



**EXHIBIT B**

Other Charges  In addition to finance charges, the following other charges will apply

- An annual fee of $50 reflected on the monthly statement for the first billing cycle of each year of your Draw Period beginning with the 13th billing cycle, whether or not you obtain Advances under your Line  This fee is not refundable
- A late payment fee of the greater of 10% of the unpaid minimum payment or $40, if Bank does not receive your minimum payment at the address shown on your statement within 10 days of the Due Date  Bank may charge an additional late payment fee for each billing cycle that your Line is past due
- An over limit fee of $25 whenever you go over your Credit Line  Bank may charge an additional $25 for each billing cycle that you remain over your Credit Line
- A returned payment fee of $25 if you make a payment on your Line which is returned to Bank unpaid because of insufficient funds, a closed account, stop payment, or any other reason
- A returned check fee of $25 if you write a Check that Bank dishonors under the "Advances  section of this Agreement
- A stop payment fee of $25 for the service of stopping payment on a Check and a $25 service fee for renewal of each stop payment order
- An early termination fee of $_____0.00_____ if you close your Line within the first 36 months
- A document request fee of $6 per copy for service of providing copies  Bank will not charge you for documents Bank is required to give you by law
- Any real estate related closing fees due at the closing of your Line are reflected on the HUD1 settlement statement provided to you by the closing agent and which is hereby incorporated and made part of this Agreement by this reference

Bank does not lose any of its other rights under this Agreement whether or not it charges late payment or over limit fees  The application of any fee shall not cure the default which initiated the fee

Security Interests  Your Line will be secured by a mortgage (Mortgage) on your dwelling (Dwelling)  If the Dwelling is your primary or secondary residence, you represent and warrant to Bank that at all times during the term of this Agreement your Dwelling, or a minimum of one unit of your multi unit Dwelling, shall be occupied by you and shall not be used as rental property  Bank agrees to waive any security interest in the Dwelling to the extent it secures Advances which may be in excess of your Credit Line  You name Bank as loss payee and beneficiary of the proceeds of, and assign to Bank any unearned premiums of, all insurance connected with your Line  You must not adversely affect Bank s interest in the Dwelling by any action or inaction  You must keep the Dwelling in good condition, promptly pay all mortgages and other liens against the Dwelling, and promptly pay all taxes and assessments on the Dwelling  You must not sell or transfer title to the Dwelling without Bank s permission, or use the Dwelling for any illegal purpose

Property Insurance  You must keep the Dwelling fully insured against loss or damage on terms which are acceptable to Bank to the extent permitted by law  You must carry flood insurance if required by federal law  You may obtain property insurance or furnish existing property insurance from anyone that is acceptable to Bank provided the insurer is authorized to do business in the state or jurisdiction where the Dwelling is located or is an eligible surplus lines carrier  You agree to furnish Bank with written evidence of such insurance, with Bank named as loss payee and proof of payment of insurance premiums  If you fail to do so, Bank may buy insurance to protect Bank s interest and add the premium cost to the unpaid balance of your Line, subject to the same finance charges as Advances against your Line  You assign to Bank the proceeds from any such insurance policies up to the unpaid balance of your Line  Bank may apply such proceeds, including any return of unearned premiums and payments for claims under such policies, to reduce the unpaid balance of your Line  You irrevocably authorize Bank as your agent and on your behalf to negotiate, settle and release any claim under your insurance and to submit insurance claims for you and to receive and sign your name to any checks or drafts or related papers obtained from insurance companies

Tax Deductibility  You should consult a tax advisor regarding the deductibility of interest and charges on your Line

Statements  Bank agrees to mail or deliver to you a monthly statement for each billing cycle at the end of which there is a balance which is a debit or credit balance of more than $1 or on which a finance charge has been imposed  The balance is the sum of all outstanding Advance(s), fees, payments, other credits other charges and debits, and finance charge(s)

Payments  Your payments will be due monthly  You may pay the entire unpaid balance of your Line and/or your FRP(s) at any time  You are required to pay a minimum payment by the Due Date shown on your statement equal to the sum of the Line Minimum Payment and the FRP Minimum Payment for each FRP in use

      a) Line Minimum Payment  The Line Minimum Payment will equal the periodic finance charges that accrued on the outstanding Line balance during the preceding billing cycle as shown on each monthly statement (Interest Only Minimum Payment)

      b) The FRP Minimum Payment is  A fixed payment amount that is sufficient to pay off the Partition Advance Fee, the balance and periodic finance charges for each FRP, if one hundred twenty (120) equal payments at the fixed rate applicable to that FRP were made  Any amount still owing after one hundred nineteen (119) billing cycles will be added to the final minimum payment due  Additional payments on any FRP may be made at any time but you will continue to be obligated to make the fixed payment for the FRP as long as any amount is still owing on the FRP  The amount of any reduction in principal from a payment on an FRP will become available to you on your Line once it is posted, until the end of the Draw Period  If your Draw Period is not renewed then access to the Line will not be available during the Repayment Period

      c) Repayment Period  The Minimum Payment may not fully repay the principal that is outstanding by the end of the Draw Period  If your Draw Period is not renewed for an additional term, during the Repayment Period you may continue to make scheduled payments on any Fixed Rate Partition balances outstanding at the end of the Draw Period until they are paid in full  Additionally, any outstanding line balance and Other Charges will be converted to a Fixed Rate Partition balance without a Partition Advance fee on the last business day of your Draw Period and will be subject to finance charges for a Fixed Rate Partition  and will be required to be repaid in one hundred twenty (120) equal monthly payments for balances of $5,000 or more, or sixty (60) equal monthly payments for balances of less than $5 000  Any amount still owing after one hundred nineteen (119) billing cycles or after fifty nine (59) billing cycle respectively  will be added to the final minimum payment due

Payments will be applied in the following order  First, to each FRP on a first in first out basis for all unpaid periodic finance charges and then to the FRP's principal balance in an amount necessary to amortize the FRP within its amortization schedule, then to all unpaid periodic finance charges on the Line, then to all Other Charges, then to the Line  For introductory and promotional offer balances, payments to the Line are applied on the basis of the lowest rate balance first to highest rate balance last  If there are no balances on the Line, overpayments are applied as a prepayment to the FRP(s) on a first in first out basis  If there are no balances on any FRP or on the Line, overpayments are credited to the Line and returned upon request  In order to make additional partial prepayments to an FRP or to prepay an FRP in full without paying off your Line, you must contact Customer Service to make arrangements to do so

Stop Payment Orders  We agree to honor a stop payment order against a Check when received from you within a reasonable time prior to payment  A stop payment order becomes effective afte  we have actually received the order and had a reasonable time to process it, and the order will remain in effect for thirteen months  Our acceptance of a stop payment order does not mean that the Check has not yet been paid, and we shall have no liability resulting from the payment of a Check before your stop payment order becomes effective  A stop payment order may be renewed for successive periods equal to its original period of effectiveness if we receive a renewal notice prior to the order becoming ineffective

A stop payment order against a Check must accurately describe it as to date, number, amount, and payee, and must correctly recite your name and the Account number  You agree that it is current industry standard to process stop payment orders by means of computer technology  Accordingly, your failure to provide the exact identification of Account number and Check number in order to identify the Check to be stopped will result in the Check being paid if presented, and we will not be liable for such payment  Errors in your name or the Account number, or inaccuracies in the description of the number, amount, issue date or payee on your written stop payment order shall relieve us from any liability for any mistaken payment or wrongful dishonor  Any errors on our written acknowledgment to you of a stop payment order, must be reported by you in writing to our Customer Service Department within 10 calendar days of the written acknowledgment date  We shall not be liable for any mistaken payment or wrongful dishonor occurring after the 10-day period, unless errors or inaccuracies are so reported to us within the 10 day period

Before we will release a stop payment order, our Customer Service Department may require the receipt of a written request, signed by you, requesting the withdrawal of the order

In the event we recredit the Account  or a paid Check, then you hereby assign to us all rights against third parties  You or any joint account holder may order a stop payment  You agree that we will not be obligated to reimburse you immediately upon notice of alleged wrongful payment, that it is your obligation to prove the fact and amount of damage suffered, and that in no case will we be liable for more than your actual damage

NHEAGMT2 (07/04)

ERA-MULTI-V1_2

We shall not be liable for any damages unless we have failed to act in good faith and exercise ordinary care   You agree to indemnify us and hold us harmless from any and all expenses incurred or damages suffered by us in honoring a stop payment order

To place a stop payment order, write to National City, Equity Reserve Stop Payment Department, 4661 E Main Street, Columbus, Ohio 43251 0928

Termination of Line   Bank can terminate your Line and require you to pay the entire outstanding balance in one payment if you breach a material obligation of this Agreement in that
- You engage in fraud or material misrepresentation in connection with your Line
- You do not meet the repayment terms of this Agreement
- Your action or inaction adversely affects the collateral or Bank s rights in the collateral

To the extent permitted by 11 USC 506, Bank shall be entitled to reasonable court costs and attorneys' fees for independent counsel that Bank hires (unless you are a resident of New Hampshire, in which case we may not recover our attorneys' fees from you)   Interest after termination, whether prior to or after judgment by a court of competent jurisdiction, shall accrue upon the outstanding unpaid balance at the rate determined under this Agreement until such balance is paid in full

Suspension or Reduction of Credit Line   Bank can refuse to make additional extensions of credit or reduce your Line if you breach a material obligation of this Agreement in that
- The value of the Dwelling securing your Line declines significantly below its present appraised value for purposes of the Credit Line
- Bank reasonably believes you will not be able to meet the repayment requirements due to a material change in your financial circumstances
- You are in default of a material obligation under this Agreement
- Government action prevents the Bank from imposing the annual percentage rate provided for or impairs the Bank s security interest such that the value of the interest is less than 120 percent of the Credit Line
- A regulatory agency has notified the Bank that continued Advances would constitute an unsafe or unsound practice
- The maximum annual percentage rate is reached

If your Line is suspended and you have used any FRP(s) then at Bank's option Bank may terminate the FRP(s) and transfer any FRP balances to your Line Bank will give you written notice of any such action and conditions for reinstating your credit privileges   Bank may reinstate your credit privileges when the conditions leading to suspension are cured to Bank's satisfaction   Bank may require you to request reinstatement of credit privileges when the conditions leading to suspension or reduction of your Credit Line no longer exist   An additional title examination and other documentation may be required to reinstate your Line, and any costs associated with reinstatement will be paid by you where permitted by law

Change in Terms   Bank may change certain terms of this Agreement at any time by giving you 15 days prior notice
- The index and margin used for this Line if the original index is no longer available
- A change that you specifically agree to
- A change that benefits you
- An insignificant change
- Other changes permitted by applicable law

Any change in terms will apply to balances outstanding on the effective date of the change as well as to balances generated thereafter

Other Provisions   You shall promptly notify Bank of any change in circumstances which has a substantial adverse effect on your credit   You will furnish Bank with financial statements in a form satisfactory to Bank as Bank may request from time to time   Bank may also require a title examination and/or appraisal from time to time, the cost of which will be paid by you where permitted by law
If this Agreement is signed by more than one borrower, each of you may draw Checks on the Line or use the Cards, and each and every borrower is jointly and severally liable for all Advances and charges on the Line   Any of you may direct Bank to not make further Advances on the Line, however, reinstatement will only be made on the joint request of all of you

Your rights in your Line may not be assigned   The Mortgage may not be assumed by a subsequent purchaser of the Dwelling   All fees paid to Bank are not refundable

All of Bank s rights under this Agreement are valid to the extent permitted by applicable law   If it is determined for any reason that any part of this Agreement is invalid or unenforceable, this shall not affect the validity or enforcement of any other provision, and this Agreement will then read as if the invalid or unenforceable part were not there

Bank may delay exercising any of its rights under this Agreement without losing them   We may accept late payments or partial payments without losing any of our rights   If your payment is marked with the words "Paid in Full" or similar language, you must send your payment to National City, 6750 Miller Road, Brecksville, Ohio 44141, Locator No   7107   If your payment is made to any other address, we may accept the payment without losing any of our rights

You understand that Bank is a national bank located in Ohio, and that Bank s decision to extend the Line to you was made in Ohio   Therefore, this Agreement and your use of the Line, Credit Line, and Checks, shall be governed by and construed in accordance with (a) Federal laws and regulations including but not limited to 12 USC § 85 and (b) the laws of Ohio, to the extent Ohio laws are not preempted by federal laws or regulations, and without regard to conflict of law principles

The annual IRS Form 1098 will be issued only to the first borrower listed on this Agreement at origination and the designation of a borrower as first cannot be changed subsequently
An electronic or optically imaged reproduction of this Agreement or any other document related to your Loan constitutes an original document and may be relied on in full by all parties to the same extent as an original

You can change any term of this Agreement only in a writing signed by us
From time to time, we may offer you special rates for balance transfer transactions or introductory or promotional offers on your Line   If we do, we will advise you of the annual percentage rates and finance charges associated with the special rate offer, how long they will be in effect, the balances to which they will apply, and other terms of the special rate offer   Any special rate offer will be subject to the terms of the offer and this Agreement

Except as otherwise prohibited by law, Bank may provide to others, including but not limited to, consumer credit reporting agencies, information about our transactions and experiences with you   Also, Bank and its affiliates (collectively "National City") may share with each other all information about you for the purposes, among other things, of evaluating credit applications or offering products and services that National City believes may be of interest to you   Under the Fair Credit Reporting Act there is certain credit information that cannot be shared about you (unless you are a business) if you tell National City by writing to National City Corporation, Attention   Office of Consumer Privacy, P O   Box 4068, Kalamazoo, MI   49009   You must include your name, address, Line (account) number and social security number

You agree that you and Bank have an established business relationship, and unless otherwise prohibited by law, that National City may contact you to offer you products and services that National City thinks may be of interest to you   Such contacts are not unsolicited, and National City may contact you with an automated dialing and announcing device or by fax, email or other form of electronic communication and we may monitor telephone calls with you to assure quality service

In this Agreement, the term "affiliates" means current and future affiliates of Bank, including, but not limited to, the following National City Corporation subsidiaries   National City Bank of Indiana, National City Bank of Michigan/Illinois, National City Bank of Pennsylvania, National City Bank of Southern Indiana, National City Home Loan Services, Inc , First Franklin Financial Corporation, National City Bank of Kentucky, Madison Bank and Trust Company, National City Mortgage Co   and National City Mortgage Services Co



NHEAGMT3 (07/04)

You are hereby notified that a negative credit report reflecting on your credit record may be submitted to a consumer (credit) reporting agency if you fail to fulfill the terms of your credit obligations. If you believe that we have information about you that is inaccurate or that we have reported or may report to a credit reporting agency information about you that is inaccurate, please notify us of the specific information that you believe is inaccurate by writing to National City, P.O. Box 94982, Cleveland, Ohio 44101, Attn: Credit Bureau Disputes, Locator 7113.

NOTICES. The following notices are given by Bank only to the extent not inconsistent with 12 U.S.C. Section 85 and related regulations and opinions, and/or the choice of law provision set forth herein (with respect to which Bank expressly reserves all rights). You acknowledge receipt of the following notices before becoming obligated:

If the Dwelling is located in California: Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of the Property.

If the Dwelling is located in Colorado: If your payments are received after the due date, even if received before the date a late fee applies, you may owe additional and substantial money at the end of the credit transaction and there may be little or no reduction of principal. This is due to the accrual of daily interest until a payment is received.

If the dwelling is located in Connecticut: Your initial Draw Period will be 9 years 10 months and cannot be renewed for additional draw periods.

If the Dwelling is located in Florida: FLORIDA DOCUMENTARY STAMP TAX IN THE AMOUNT REQUIRED BY LAW HAS BEEN PAID OR WILL BE PAID DIRECTLY TO THE DEPARTMENT OF REVENUE, AND FLORIDA DOCUMENTARY STAMPS HAVE BEEN PLACED ON THE TAXABLE INSTRUMENTS AS REQUIRED BY CHAPTER 201, FLORIDA STATUTES.

If the Dwelling is located in Maryland: We elect Subtitle 9, Credit Grantor Open End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland.

If the Dwelling is located in Minnesota: If the amount of this Loan is $100,000 or more, we elect Minn. Stat. § 334.01.

If the Dwelling is located in Missouri: Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

If the Dwelling is located in New York: YOU SHOULD CHECK WITH YOUR LEGAL ADVISOR AND WITH OTHER MORTGAGE LIEN HOLDERS AS TO WHETHER ANY PRIOR LIENS CONTAIN ACCELERATION CLAUSES WHICH WOULD BE ACTIVATED BY A JUNIOR ENCUMBRANCE.

DEFAULT IN THE PAYMENT OF THIS LOAN AGREEMENT MAY RESULT IN THE LOSS OF THE PROPERTY SECURING THE LOAN. UNDER FEDERAL LAW, YOU MAY HAVE THE RIGHT TO CANCEL THIS AGREEMENT. IF YOU HAVE THIS RIGHT, THE CREDITOR IS REQUIRED TO PROVIDE YOU WITH A SEPARATE WRITTEN NOTICE SPECIFYING THE CIRCUMSTANCES AND TIMES UNDER WHICH YOU CAN EXERCISE THIS RIGHT.

If the Dwelling is located in North Dakota: THIS OBLIGATION MAY BE THE BASIS FOR A PERSONAL ACTION AGAINST THE PROMISOR OR PROMISORS IN ADDITION TO OTHER REMEDIES ALLOWED BY LAW.

If the dwelling is located in Oregon: NOTICE TO THE BORROWER: Do not sign this loan agreement before you read it. The loan agreement may provide for the payment of a penalty if you wish to repay the loan prior to the date provided for repayment in the loan agreement.

If the Dwelling is located in Texas: THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

If the Dwelling is located in Vermont: NOTICE TO CO-SIGNER: YOUR SIGNATURE ON THIS NOTE MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.

COPY RECEIVED. You agree to be legally bound to all provisions of this Agreement. You acknowledge receipt of a completed copy of this Agreement, including important information below regarding your rights to dispute billing errors ("Your Billing Rights").

| JEFFERY ADAMS | X _[signature]_ |
|---|---|
| TYPE OR PRINT NAME | SIGNATURE |
| NICOLE ZACHERSON | X _[signature]_ |
| TYPE OR PRINT NAME | SIGNATURE |
| | X |
| TYPE OR PRINT NAME | SIGNATURE |
| | X |
| TYPE OR PRINT NAME | SIGNATURE |

Address of Dwelling: 5709 GLASSBORO WAY SACREMENTO, California 95842

NHEAGMT4 (07/04)



ERA-MULTI-V1_4